JUDGE SCHOFIELD

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LAWRENCE E. PENN, III,

                                        Petitioner,

                    -against-

NEW YORK STATE,

                                        Respondent,

# 18 CV 6194

**ECF CASE**

**MEMORANDUM OF LAW
IN SUPPORT OF WRIT OF
ERROR CORAM NOBIS**

**CASE NO.:  18-cv-_____**

**WRIT OF ERROR CORAM NOBIS PURSUANT TO 28 U.S.C. § 1651**

Lawrence E. Penn III
145 East 48th Street
New York, NY 10017
Phone:  +1-917-582-8940
Lpenn3@gmail.com

-i-

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES..................................................................................iv

JURISDICTION & WRIT OF CORAM NOBIS: 28 U.S.C. § 1651 .........................1

PRELIMINARY STATEMENT ..............................................................................2

PROCEDURAL HISTORY......................................................................................5

STATEMENT OF FACTS .......................................................................................9

I.   THE FORMATION OWNERSHIP AND CONTROL OF THE PARTNERSHIP...........9

II.   THE INDICTMENT, ARREST, AND CONVICTION IN CONFLICT WITH LAW ....12

III.  THE FORFEITURE OF MR. PENN'S OWNERSHIP INTEREST IN THE
PARTNERSHIP IN CONFLICT WITH NEW YORK STATE LAW ............................14

IV.  THE APPEAL PROCESS:  U.S. SUPREME COURT PRECEDENT AND NEW YORK
STATE LAW OVERLOOKED ...............................................................................15

LEGAL STANDARDS OF REVIEW....................................................................17

I.   LEGAL STANDARD UNDER ALL WRITS ACT:  28 U.S.C. § 1651 ........................17

II.   REQUIREMENT TO EXHAUST ALL AVAILALBLE STATE REMEDIES ..............20

III.  REQUIREMENT OF SUBSTANTIAL SHOWING TO BE FULFILLED AND THE
REQUIREMENT FOR A STAY AT COMMON LAW...............................................21

ARGUMENT ........................................................................................................23

I.   THE FACTS, THE RECORD AND THE LAW SHOW THRESHOLD
REQUIREMENTS HAVE BEEN MET FOR RELIEF UNDER 28 U.S.C. § 1651 ........23

II.   THE PETITION HAS BEEN SUBMITTED WITHOUT DELAY AND SOUND
REASON FOR FAILURE TO SEEK EARLIER RELIEF IS BECAUSE THE
PETITIONER HAS JUST EXHAUSTED ALL STATE LEVEL APPEALS.................26

A.   New York State CPL § 440.10:  Motion to Vacate Judgment .................29

B.   New York State CPL § 460.15:  Appeal to New York's Intermediate Court ..........29

C.     New York State CPL § 460.20:  Appeal to New York State Court of Appeals.......31

III.   THE RECORD SHOWS THERE ARE CIRCUMSTANCES COMPELLING SUCH
       ACTION TO ACHIEVE JUSTICE AND THERE IS MERIT FOR CORAM NOBIS
       RELIEF BASED ON LEGAL STANDARDS OF REVIEW ..........................................32

       A.     The Record Outlines A "Substantial Showing" Warranting Relief because Mr. Penn
              was a Joint or Common Owner with rights to Distributions from the Partnership
              making the state level charge and conviction unlawful..........................................32

       B.     The Record Outlines that the Substantial Showing Requirement has been met,
              Issues Involved are Debatable Among Jurists, and credible Assertions of Factual
              Innocence, Actual Innocence and Legal Innocence are Present..............................34

       C.     Mr. Penn Continues to Suffer Legal Consequences Including "Stigma-Plus"
              Warranting Relief of a Hearing on the Merits by the Court of Appeals of the State
              of New York, where common law pursuant to Zinke (1990) originated ................37

       D.     The Entry of a Stay is Appropriate and Warranted as Relief ...................................43

       CONCLUSION .........................................................................................................44

# TABLE OF AUTHORITIES

*Cases*

**Page**

*Agrawal v. United States,*
    2017 U.S. Dist. LEXIS 121909 ...........................................................................37

*Barefoot v. Estelle*, 463 U.S. 880 at 893 n. 4. *Word v. Lord,*
    U.S. Dist. LEXIS 18031 (S.D.N.Y. Sept. 23, 2002) ........................................30

*Blackledge v. Perry,*
    417 U.S. 21 (1974) ...................................................................................passim

*Bousley v. United States,*
    523 U.S. 614, 623 (1998) ................................................................................24

*Boyd v. Hawk*, 1996 U.S. Dist. LEXIS 21279, 94 Civ. 7121 (DAB),
    1996 WL 406680 at *3 (S.D.N.Y. May 31, 1996) ..........................................27

*Calderon v. Thompson,*
    523 U.S. 538, 559, 118 S.Ct. 1489, 140 L.Ed.2d 728 (1998) ...................36, 37

*Catskill Mts. Chapter of Trout Unlimited, Inc. v. City of New York,*
    244 F. Supp. 2d 41 (N.D.N.Y. 2003)...............................................................22

*CBS Inc. v. Davis,*
    510 U.S. 1315 (1994) ................................................................................22, 43

*Cisse v. United States,*
    330 F. Supp.2d 336 (S.D.N.Y. 2004) ..............................................................20

*Class v. United States,*
    138 S. Ct. 798, 800 (2018).........................................................................passim

*Clinton v. Goldsmith,*
    526 U.S. 529 (1999) .......................................................................................20

*Coleman v. Thompson,*
    501 U.S. 722, 750 (1991) ................................................................................19

*Commonwealth v. Hinds,*
    101 Mass. 209,210 (1869) ...............................................................................26

*Cotto v. Herbert,*
    331 F.3d 217, 238 (2d Cir. 2003) ...................................................................19

*Davis v. Poole,*
    767 F. Supp. 2d 409 (2011) ...........................................................................36

*Davis v. United States,*
    417 U.S. 333 (1974) .....................................................................................25

*Daye v. Attorney Gen.,*
    696 F.2d 186, 194 (2d Cir. 1982) .................................................................28

*Excell v. New York,* 2003 U.S. Dist. LEXIS 24126, 01-CV-3073, 03-Misc-0066,
    2003 WL 23185749 at *13 (E.D.N.Y. Oct. 30, 2003).....................................27

*Faison,* 2009 U.S. Dist. LEXIS 115306,
    2009 WL 4729931 ........................................................................................19

*Fleming v. United States,*
    146 F.3d 88, 89 (2d Cir. 1998) .............................................................2, 26, 38

*Foont v. United States,*
    93 F.3d 76, 79 (2d Cir. 1996) ................................................................passim

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,*
    528 U.S. 167, 180-81 (2000) .........................................................................19

*Grey v. Hoke,*
    933 F.2d 117, 119 (2d Cir. 1991) .................................................................28

*Haines v. Kerner,*
    404 U.S. 519, 520, 30 L. Ed. 2d 652, 92 S. Ct. 594 (1972)................................1

*Hancock v. Rivera,*
    2012 U.S. Dist. LEXIS 106026).....................................................................21

*In re Baldwin-United Corp. (Single Premium Deferred Annuities Ins. Litigation),*
    770 F.2d. 328 (2nd Cir. 1985).......................................................................20

*Joint Anti-Fascist Refugee Comm. v. McGrath,*
    341 U.S. 123, 168 (1951) ..............................................................................42

*Klein v. Harris,*
    667 F.2d 274, 282 (2d Cir. 1981) .................................................................27

*Lee v. Kemna,*
    534 U.S. 362, 375 (2002) ............................................................................................19

*Lucidore v. New York State Div. of Parole,*
    209 F.3d 107, 114 (2d Cir. 2000) .........................................................................35, 36

*Menna v. New York,*
    423 U.S. 61 (1975) ..............................................................................................passim

*Mills v. Lowndes,*
    26 F. Supp. 792 (1939, DC Md) ................................................................................22

*Natale v. Town of Ridgefield,*
    170 F.3d 258, 263 (2d Cir.1999) ..............................................................................42

*Nicks v. United States,*
    955 F.2d 161, 167 (2d Cir. 1992) .......................................................................26, 28

*O'Sullivan v. Boerckel,*
    526 U.S. 838, 847-48, (1999) ..................................................................................28

*Paul v. Davis,*
    424 U.S. 693, 712 at 701 (1976).................................................................................42

*Pena v. Fischer,* 2003 U.S. Dist. LEXIS 7240, 00 Civ. 5984 (HB)(MHD),
    2003 WL 1990331 at *12 (S.D.N.Y. Apr. 30, 2003) .................................................27

*People v Levin,*
    57 N.Y.2d 1008 (1982)...........................................................................3, 16, 23, 30

*People v. Bachert,*
    69 N.Y.2d 593 (1987).................................................................................................27

*People v. Penn,*
    153 A.D.3d 1171 (1st Dep't 2017) ...........................................................................16

*People v. Zinke,*
    76 N.Y.2d 8, 9 (1990)........................................................................................passim

*Perez v. Greiner,* 2003 U.S. Dist. LEXIS 18995, 02 Civ. 1436 (JCF),
    2003 WL 22427759 at *7 (S.D.N.Y. Oct. 23, 2003).................................................27

*Peterson v. Missouri,*
    355 F. Supp. 1371 (1973) .........................................................................................21

*Porcelli v. United States,*
    404 F.3d 157, 158 (2d Cir. 2005) ....................................................................................26

*Rajaratnam v. United States,*
    15 Civ. 5325 (S.D.N.Y. 2017).................................................................32, 34, 35

*Richter v. Artuz,*
    77 F. Supp. 2d 385, 392 (S.D.N.Y. 1999) ..........................................................1

*Rosario v. United States,*
    164 F.3d 729, 733 (2d Cir. 1998) ....................................................................35

*Sawyer v. Whitley,*
    505 U.S. 333, 339, 112 S.Ct. 2514, 120 L. Ed. 2d 269 (1992) .........................36

*Schlup v. Delo,*
    513 U.S. 298, 329, 130 L. Ed. 2d 808, 115 S.Ct. 851 (1995)......................35, 37

*Snype v. Hoke,*
    728 F. Supp. 207, 210 (S.D.N.Y. 1990) ..........................................................28

*Spinale v. USDA,*
    621 F. Supp. 2d 112 (S.D.N.Y. 2009) .............................................................40

*Thornton v. Reynolds,*
    2001 U.S. Dist. LEXIS 10435, at *3 (S.D.N.Y. July 26, 2001) ...................30, 35

*Tung v. New York State Dep't of Corrs.,* 1993 U.S. Dist. LEXIS 4259, CV 91-4364, 4365 (RJD),
    1993 WL 113302 at *2 (E.D.N.Y. March 31, 1993).........................................27

*United States v. Denedo,*
    556 U.S. 904, 911 (2009) ..........................................................................17, 23

*United States v. Dickler,*
    64 F.3d 818 (3d Cir. 1995) .............................................................................24

*United States v. Dove,*
    247 F.3d 152, 155 (4th Cir. 2001) ...................................................................24

*United States v. Keane,*
    852 F.2d 199, 203 (7th Cir. 1988) ...................................................................18

*United States v. Loschiavo,*
    531 F.2d 659, 666 (2d Cir. 1976) ....................................................................24

*United States v. Mandanici,*
    205 F.3d 519, 524 (2d Cir. 2000) ................................................................28

*United States v. Mayer,*
    235 U.S. 55, 69 (1914) ................................................................18

*United States v. Morgan,*
    346 U.S. 502 (1954) ................................................................passim

*United States v. New York Tel. Co.,*
    434 U.S. 159 (1977) ................................................................21

*United States v. Reguer.*
    901 F. Supp. 515 at 520 (1995) ................................................................25

*United States v. Rife,*
    514 F. Supp. 368 (1981, SD Ohio) ................................................................20

*Western Fruit Growers, Inc. v. United States,*
    124 F.2d 381 (9th Circuit 1941) ................................................................22

*Whitmore v. Arkansas,*
    495 U.S. 149, 154 (U.S. 1990) ................................................................19

*Williams v. Kullman,*
    722 F.2d 1048, 1050 (2d Cir. 1983) ................................................................1

*Williams v. Taylor,*
    529 U.S. 362, 405 (2000) ................................................................21

**Statutes**

28 U.S.C. § 1651 ................................................................passim

28 U.S.C. § 2253 ................................................................35

N.Y. Correction Law § 700-706 ................................................................5, 37, 41

N.Y. CPL § 255.20 ................................................................13

N.Y. CPL § 440.10 ................................................................29

N.Y. CPL § 460.15 ................................................................29

N.Y. CPL § 460.20 ................................................................8, 16, 31

N.Y. Penal Law § 155.00(5) ..................................................................................3, 34

N.Y. Penal Law § 70.00(2) ........................................................................................6

***Other Authorities***

A.B.A. Standards for Criminal Justice, Collateral Sanctions and Discretionary Disqualification of Convicted Persons (3d ed. 2004) ....................................................................39

*Journal of Contemporary Criminal Justice,*
    Vol. 21 No. 3, page 196, (August 2005) ..................................................36

*Offender Reentry and the Collateral Consequences of Criminal Convictions: An Introduction,*
    30 N.Y.U. Rev. L. & Soc. Change 585 (2006) ..................................................39

*Preventing Internal Exile: The Need for Restrictions on Collateral Consequences,*
    11 Stan. L. & Pol'y Rev. 153 (1999) ..................................................39

*Procedural Due Process and Reputational Harm: Liberty as Self-Invention,*
    University of California, Davis Vol. 43:79 (2009) ..................................................40

*Race and Reputation: The Real Legacy of* Paul v. Davis,
    85 VA. L. REV. 569, 575 at 622 (1999) ..................................................40, 42

*Starting Over with a Clean Slate: In Praise of a Forgotten Section of the Model Penal Code,*
    30 Fordham Urb. L. J. 1704 (2003) ..................................................39

New York Constitution Article I § 6 ..................................................................34

U.S. Constitution Article IV ..................................................................1

U.S. Constitution VI Amendment ..................................................................34

U.S. Constitution XIV Amendment ..................................................................34

***Rules***

Federal Rules of Civil Procedure, Rule 52 ..................................................................22

The Plaintiff, Lawrence E. Penn III (the "Petitioner" or "Mr. Penn"), respectfully submits this memorandum of law, and accompanying affidavit, in support of this writ of Error Coram Nobis under the terms of the All Writs Act. The Petitioner respectfully requests the United States District Court of the Southern District of New York to enforce the U.S. Supreme Court common law precedents confirmed in *Class v. United States,* 138 S. Ct. 798, 800 (2018) and reverse the Petitioner's case to the Court of Appeals of the State of New York to be heard on the merits. "The complaint of a *Pro Se* litigant is to be liberally construed in his favor") (*citing Haines v. Kerner,* 404 U.S. 519, 520, 30 L. Ed. 2d 652, 92 S. Ct. 594 (1972)); *Williams v. Kullman,* 722 F.2d 1048, 1050 (2d Cir. 1983) (where a petitioner is proceeding *pro se* and "lacks expertise," the Court "should review [his] petition with a lenient eye"); *Richter v. Artuz,* 77 F. Supp. 2d 385, 392 (S.D.N.Y. 1999).

## JURISDICTION & WRIT OF CORAM NOBIS: 28 U.S.C. § 1651

The Plaintiff, Lawrence E. Penn III, is a United States Citizen, specifically a federal citizen and resides in New York, New York within the borough of Manhattan. The events giving rise to the petition occurred in this district. At the time of commencement of this petition, the Plaintiff is no longer in custody and the claims involve violations of Privileges and Immunities under the U.S. Constitution Article IV by way of violation of immunities and privileges under New York State law. The claims also involve violations under the U.S Constitution VI Amendment and XIV Amendment Due Process clause. The writ of Error Coram Nobis is constitutionally authorized, proper and necessary to exercise justice in the jurisdiction of this district court under 28 U.S.C. § 1651.

The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law. An alternative writ may be issued by a justice or judge of a court which has jurisdiction. *See* 28 U.S.C. § 1651(a). In *United States v. Morgan*, 346 U.S. 502 (1954), the Supreme Court held that federal courts are authorized to grant the Writ of Error Coram Nobis under the terms of the All Writs Act. "Coram Nobis is essentially a remedy of last resort for petitioners who are no longer in custody pursuant to a criminal conviction and therefore cannot pursue direct review or collateral relief by means of a writ of habeas corpus." *See Fleming v. United States*, 146 F.3d 88, 89 (2d Cir. 1998). The All Writs Act, 28 U.S.C. § 1651(a), empowers the federal courts to issue Writs of Error Coram Nobis but only such as are necessary or appropriate in aid of their jurisdictions and agreeable to the uses and principles of law. Jurisdiction pursuant to the All Writs Act and Writs of Error Coram Nobis § 1651 is Federal District Court and venue is proper because claims arose here.

## PRELIMINARY STATEMENT

The Plaintiff in this petition owned 100% interest in a Limited Liability Company and through it, acted as a General Partner in Limited Partnership and was a joint or common beneficial owner, in that he invested money in exchange for rights to distributions from a partnership which he founded, raised, invested and managed (the "Partnership" or "Camelot Acquisitions: Secondary Opportunities, L.P." or "c/k/a CM Growth Capital, LP" or "CASO, L.P."). Unbeknownst to Mr. Penn at the time of his plea, he did not know that the charge conflicted with longstanding New York State law. Mr. Penn was charged with larceny for "misappropriating assets" and as part of a plea was required to forfeit his interest the Partnership.

The Court of Appeals of the State of New York clearly interpreted the larceny statute and held in *People v. Zinke*, 76 N.Y.2d 8, 9 (1990) that a joint or common owner cannot be charged or convicted of larceny. *See* N.Y. Penal Law § 155.00(5). The "larceny exception" is rooted in the principle that a joint or common owner cannot "steal" from themselves, as co-owners have an equal right to possession of the property. *See Zinke*, 76 N.Y.2d at 13 (*noting* that "the purpose of this provision was to continue in force what has long been the law of New York that a partner or [joint or common owner] who appropriates partnership property is not guilty of larceny from his co-partners"). In *Zinke*, the single question in front of the Court of Appeals of the State of New York was whether a joint or common owner, tenant in partnership or partner in limited partnership could be found guilty of larceny. "As a matter of statutory interpretation" the Court answered that question "in the negative" leaving the "subject of partnership defalcations to be addressed "by any other penal provision" [outside of larceny] or "by civil litigation." *See Zinke*, 76 N.Y.2d at 8, 9 (1990).

For clarity, the Court of Appeals of the State of New York in *Zinke* (1990), specifically *took away the power of the State to prosecute larceny* [forbids a larceny prosecution] for joint or common beneficial owners of the rights to distributions in or associated with a partnership. Mr. Penn's larceny conviction is the only larceny conviction by plea or following a trial of a joint or common beneficial owner on record that has been maintained in New York State history in conflict with state law. Following the plea and conviction, Mr. Penn learned that the larceny charge conflicted with longstanding New York law and took action to remedy the injustice by appealing the conviction. The trial court and the Appellate Division First Department both refused to consider the merits of the claim stating, because he pled guilty, Mr. Penn forfeited his right to appeal *citing People v. Levin*, 57 N.Y.2d 1008 (1982).

Following the denial of the appeal, the U.S. Supreme Court confirmed *Class v. United States*, 138 S. Ct. 798 (2018). The U.S. Supreme Court's common law precedent *Class v. United States,* 138 S. Ct. 798, 800 (2018) dictates a reversal to the Court of Appeals in situations similar to this case. Specifically, the *Class* precedent confirmed over 150 years of decisions that guilty pleas do not bar a criminal defendant from challenging the constitutionality of a conviction, particularly "where the claim implicates the very power of the State to prosecute." *Class,* 138 S. Ct. 798, 800-01. The U.S. Supreme Court explicitly reaffirmed the *Blackledge-Menna* doctrine, its rulings in *Blackledge v. Perry,* 417 U.S. 21 (1974) and *Menna v. New York,* 423 U.S. 61 (1975). Both rulings held that a defendant who pleads guilty can appeal any constitutional claims. Where the appellate claim implicates "the very power of the State" to prosecute the defendant, a guilty plea cannot by itself bar it. *See Blackledge,* 417 U.S. at 30. The U.S. Supreme Court opinion cites both state and federal cases, and refers to the "view of the nature of a guilty plea" expressed by "federal and state courts throughout the 19th and 20th centuries." The U.S. Supreme Court opinion is not limited to challenging the constitutionality of the underlying statute, but also due process claims, in addition, Court held that a defendant "may pursue his constitutional claims on direct appeal." *Id.* at 11. *(emphasis added).* Following the Supreme Court holding in *Class*, Mr. Penn requested reconsideration of leave to appeal to the Court of Appeals of New York State and his request was again denied *without explanation or hearing*.

For over two years, Mr. Penn, represented by *Pro Bono* counsel Perkins Coie, LLP, has exhausted all state level remedies through the state appeal process of the larceny conviction. He was required to forfeit his ownership interest in a private equity limited partnership that he created and suffer the collateral consequences of being a convicted felon. The very fact that Mr. Penn was a joint or common owner with right to distributions from the limited partnership is

evidence that he should have never been charged with larceny pursuant to the Court of Appeals of New York State precedent in *People v. Zinke* (1990). This makes the conviction unlawful and unconstitutional under by New York State and Federal common law as dictated by the U.S. Supreme Court. The New York State felony conviction is a disability by law and requires a relief from disabilities pursuant to N.Y. Correction Law § 700-706. Additionally, the charge alone caused a contractual loss of the position as the manager of the Partnership as well as loss 50% of the interest in the Partnership in conflict with the Partnership agreement. After exhausting all New York State level remedies through the New York State appeal process (see Procedural History) the Petitioner seeks relief under this Writ of Error Coram Nobis.

## PROCEDURAL HISTORY

On January 30, 2014, a complaint was filed alleging that Mr. Penn and others violated certain laws. The complaint, which contained false statements, was forwarded to members of the Manhattan District Attorney. Shortly thereafter on or about February 7, 2014, Mr. Penn was indicted under New York State law for Grand Larceny in the First Degree, Money Laundering in the First Degree, and Falsifying Business Records in the First Degree.[1] *See* Indictment in the Appellate Division, First Department Brief Stipulated "Appendix," attached as Exhibit A to the Penn Affidavit (hereinafter the "Appendix" or "A.") 21-38. On February 10, 2014, Mr. Penn, at his attorney's advice, voluntarily surrendered at the New York County District Attorney's Office. *See* 2/10/2014 Tr. at pgs. A. 8-20 of Exhibit A to the Penn Affidavit. At that time, Mr. Penn was arraigned and bail was set at $2,500,000.00 and he was remanded to jail. *Id.* After spending over a year in pre-trial custody, on March 16, 2015 as part of a plea agreement, Mr.

Penn pled guilty to Grand Larceny in the First Degree and Falsifying Business Records in the First Degree. *See* 3/16/2015 Tr. at pgs. A. 84-93 of Exhibit A to the Penn Affidavit. On April 20, 2015, Mr. Penn was sentenced to two to six years imprisonment on each count,[2] to be served concurrently.[3] *See* 4/20/2015 Tr. at pgs. A. 94-100 of Exhibit A to the Penn Affidavit. As a requirement of the plea, Mr. Penn was required to *forfeit his interest in the Partnership* and pay a restitution of $8.3 million.

At the time, defense counsel who subsequently negotiated a plea for Mr. Penn, never filed a *pro forma* notice of appeal after the conviction. On November 25, 2015, Mr. Penn submitted a *Pro Se* motion with this Court for an enlargement of time to file a notice of direct appeal of his conviction. While that motion was pending,[4] on March 3, 2016, Mr. Penn filed a *Pro Se* 440.10 Motion to vacate his conviction, arguing that his conviction of larceny was unlawful based on his effective role as the General Partner and owner of the interest in the Partnership and right to possess.[5] After filing his *Pro Se* motion, Mr. Penn was able to obtain Perkins Coie, LLP as *Pro Bono* appeal counsel,[6] who filed a supplemental memorandum of law

---

[1] It is important to note that Money Laundering in the First Degree, and Falsifying Business Records in the First Degree rely completely on the top count of Larceny and without the Larceny charge there could be no felony indictment by New York law.

[2] Although Falsifying Business Records in the First Degree has a maximum indeterminate sentence of four years, defense counsel did not object to the impermissible sentence of two to six years imposed on Mr. Penn for that charge. N.Y. Penal Law § 70.00(2)(e). The New York State Department of Corrections rectified the sentencing error through a letter to the trial court dated July 13, 2015.

[3] Mr. Penn was released from prison and placed under parole supervision on February 10, 2016 and was released from parole supervision on merit on February 10, 2017.

[4] On May 31, 2016, the appellate Court granted Mr. Penn's motion for an enlargement of time to perfect his direct appeal, and his notice of appeal was deemed timely filed.

[5] Mr. Penn's *Pro Se* motion also contained allegations that his conviction was obtained by fraud or duress, and contained factual allegations concerning ineffective assistance of counsel without an affidavit from his trial counsel. As described *infra*, Mr. Penn withdrew his *pro se* motion and proceeded with the memorandum of law submitted by his *Pro Bono* counsel. As such, the motion court did not reach the merits of the factual allegations made in Mr. Penn's *pro se* motion.

[6] Mr. Penn's *pro bono* counsel continues to represent him on his direct appeal and the appeal of the 440.10 Motion to the Appellate Division First Department.

in support of his 440.10 Motion to vacate his conviction. *See* 4/25/2016 Tr. at pgs. A. 101-105 of Exhibit A to the Penn Affidavit.  On June 13, 2016, Mr. Penn's *Pro Bono* counsel for the appeal process appeared before the trial court for a decision on the 440.10 Motion.  At that time, the trial court Judge asked *Pro Bono* appeal counsel to clarify whether Mr. Penn's *Pro Se* motion was effectively withdrawn, or whether counsel was supplementing Mr. Penn's *Pro Se* motion and adopting all of its arguments. *See* 6/13/2016 Tr. at pgs. A. 342-344 of Exhibit A to the Penn Affidavit.  Mr. Penn's *Pro Bono* appeal counsel confirmed for the motion court that Mr. Penn relied on *Pro Bono* appeal counsel's supplemental memorandum of law in support of vacating his conviction. *Id.*  On or about July 11, 2016, *without a hearing on the merits*, the motion court denied Mr. Penn's 440.10 Motion. pgs. A. 3-5 of Exhibit A to the Penn Affidavit.  The decision to deny the 440.10 Motion made no mention of Mr. Penn forfeiting his right to challenge his conviction through a 440.10 Motion, and thus, the question of whether Mr. Penn forfeited that right to appeal because of his guilty plea was never considered by the 440.10 Motion Court.

On August 11, 2016, Mr. Penn, through his *Pro Bono* appeal counsel, sought leave from the New York State Supreme Court Appellate Division, First Department to appeal the denial of the 440.10 Motion.  In the event leave was granted, Mr. Penn also sought permission to combine his direct appeal with the appeal of the 440.10 Motion.  On January 3, 2017, Judge Karla Moskowitz granted Mr. Penn's application for leave to appeal the denial of the 440.10 Motion. Notably, when granting leave to appeal Mr. Penn's 440.10 Motion, Judge Moskowitz *certified* that "questions of law or fact are involved which ought to be reviewed." *See* Certificate Granting Leave at pg. A. 6 of Exhibit A to the Penn Affidavit. Judge Moskowitz also granted Mr. Penn permission to consolidate his direct appeal with the appeal of the denial of the 440.10 Motion.  Oral arguments in front of the New York State Supreme Court Appellate Division, First

Department were held on September 5, 2017.  On September 26, 2017, the New York State Supreme Court Appellate Division, First Department affirmed the denial of the 440.10 Motion and direct appeal by stating that "by pleading guilty, defendant automatically forfeited appellate review" in conflict with Judge Moskowitz's *certification* granting leave to appeal to the Appellate Division, First Department.  *See* Appellate Division, First Department Decision and Order, attached as Exhibit C to the Penn Affidavit.

On October 24, 2017, Mr. Penn, through his *Pro Bono* appeal counsel, sought leave from the Court of Appeals of the State of New York pursuant to Criminal Procedure Law § 460.20 (N.Y. CPL § 460.20) to appeal from the order of the New York State Supreme Court Appellate Division, First Department, entered on or about September 26, 2017.  *See* Application for Leave letters to Court of Appeals of New York State dated October 24, 2017, November 17, 2017, and January 18, 2018 attached as Exhibit D to the Penn Affidavit.  On January 31, 2018, the application for leave to the Court of Appeals of New York State was denied *without explanation or hearing.*  *See* Denial of Leave Application, attached as Exhibit E to Penn Affidavit.  Mr. Penn, through his *Pro Bono* appeal counsel, sought Request for Reconsideration of Leave Application from the Court of Appeals of the State of New York on March 2, 2018.  The application was based on the merits of the case and U.S. Supreme Court's clear ruling in *Class v. United States* and historical precedents which dictate a reversal to the Court of Appeals in these situations.

Specifically, the *Class* decision confirmed over 150 years of decisions that guilty pleas do not bar a criminal defendant from challenging the constitutionality of a conviction, particularly "where the claim implicates the very power of the State to prosecute."  *See* Request for Reconsideration of Leave Application, attached as Exhibit F to the Penn Affidavit.  On May 30, 2018, the Request for Reconsideration of the application for leave to the Court of Appeals of

New York State was denied again *without explanation or hearing*. *See* Denial Request for Reconsideration of Leave Application, attached as Exhibit G to Penn Affidavit. To date, the U.S. Supreme Court's common law precedent *Class v. United States* (2018), the U.S. Supreme Court's common law precedent *Blackledge-Menna* doctrine, and the Court of Appeals of the State of New York's common law precedent *People v. Zinke* (1990) have not been considered, in error, in this judicial process.

## STATEMENT OF FACTS

### I.   THE FORMATION OWNERSHIP AND CONTROL OF THE PARTNERSHIP

In 2007, Mr. Penn established a private equity limited partnership known as Camelot Acquisitions: Secondary Opportunities, L.P. (the "Partnership" or "CASO L.P."). *See* the Initial CASO Limited Liability Company Agreement, *See* pgs. A. 177 - A. 264 of Exhibit A to the Affidavit of Lawrence E. Penn III (the "Penn Affidavit"). Since the time the Partnership was created and until the date of his arrest, Mr. Penn, had been the sole Managing Member and 100% beneficial owner of the Camelot Acquisitions: Secondary Opportunities G.P., L.L.C. ("CASO G.P."), through which he acted as the General Partner of the Partnership and owned the General Partner's interest in the Partnership. *See* Delaware Certificate of Formation dated October 15, 2007, at pg. A. 110 of Exhibit A to the Penn Affidavit; and the Amended and Restated CASO G.P. Limited Liability Company Agreement dated September 25, 2009 (the "CASO G.P. LLC Agreement"), at pg. A. 122 of Exhibit A to the Penn Affidavit. As the sole owner and Managing Member of the CASO G.P., Mr. Penn signed the subscription agreement accepting CASO G.P. into the limited partnership along with the other investors. *See* the Subscription Agreement for CASO G.P., attached as Exhibit B to the Penn Affidavit. In addition, Capital Calls were made in

accordance with the CASO G.P. LLC Agreement and the Partnership Agreement. *See* Capital Call Notices, pgs. A. 265-267 of Exhibit A to the Penn Affidavit.

Mr. Penn was also the sole owner of Camelot Acquisitions: Secondary Opportunities Management, L.L.C ("CASO Management"), which acted as the Investment Manager for the Partnership. As the ***sole and absolute owner of both CASO G.P. and CASO Management*** (collectively, the "CASO Entities") and under the Partnership Agreement, Mr. Penn was given broad discretion and authority over the Partnership, and he was entitled to receive the management fees and distributions in profits from the Partnership. *See* Agreement for CASO Management dated February 5, 2010, at pg. A. 171 of Exhibit A to the Penn Affidavit; and the Amended and Restated Limited Partnership Agreement dated February 5, 2010 ("the Partnership Agreement"), at pg. A. 177 of Exhibit A to the Penn Affidavit. Section 6.2 of the Partnership Agreement provides, in part, as follows:

**6.2   Management by the General Partner.**

Subject to the provisions of this Agreement, and in accordance with the purpose of the Partnership as set forth in Section 2.3, the General Partner shall have the exclusive power and authority to perform acts associated with the management and control of the Partnership and its business including the power and authority to:

(a) Receive, buy, sell, exchange, trade and otherwise deal in and with Securities and other property of the Partnership;

(c) Borrow money or property on behalf of the Partnership encumber Partnership property for the purpose of obtaining financing for the Partnership's business, and extend or modify any obligations of the Partnership;

(g) Cause the Partnership to enter into, make and perform upon such contracts, agreements and other undertakings, and to do such other acts. as it may deem necessary or advisable for, or as may be incidental to, the conduct of the

business of the Partnership, including contracts, agreements, undertakings and transactions with a Partner or Person related to a Partner; provided, however, that transactions with a Partner or Person related to a Partner for the account of the Partnership shall be on terms determined by the General Partner in good faith to be no less favorable to the Partnership than are generally afforded to unrelated third parties in comparable transactions;

(h) Cause the Partnership to invest in, or enter into, hedging arrangements designed to reduce or eliminate the risk of changes in the value of one or more Portfolio Securities;
(i) Open, conduct business regarding, draw checks or other payment orders upon, and close cash, checking, custodial or similar accounts with banks or brokers on behalf of the Partnership and pay the customary fees and charges applicable to transactions in respect of all such accounts; and

(j) Assume and exercise all of the authority, rights and powers of a general partner under the laws of the State of Delaware.

*See* Partnership Agreement at pg. A. 214 of Exhibit A to the Penn Affidavit (*emphasis added*). In addition, Section 6.16 of the Partnership Agreement provides that CASO G.P. "may in its ***sole and absolute discretion***, delegate to the Investment Manager any of the management or administrative responsibilities of the General Partner." *See* Partnership Agreement at pg. A. 227 of Exhibit A to the Penn Affidavit. Accordingly, pursuant to the Partnership Agreement, each of the limited partners of the Partnership was aware that Mr. Penn, as the sole owner and Managing Member of CASO G.P and CASO Management, had broad authority and discretion over the Partnership's assets. Limited Partners, including a key member of the Limited Partner Advisory Council, maintain that Mr. Penn could not have stolen given the Partnership. *See* Thomas Morgan Affidavit, attached as Exhibit H to the Penn Affidavit.

## II.    THE INDICTMENT, ARREST, AND CONVICTION IN CONFLICT WITH LAW

On January 30, 2014, a complaint was filed alleging that Mr. Penn and others violated certain laws.  The complaint, which contained false statements and was forwarded to members of the Manhattan District Attorney.  Mr. Penn was indicted under New York State law for Grand Larceny in the First Degree, Money Laundering in the First Degree, and Falsifying Business Records in the First Degree.  *See* Indictment at pgs. A. 21-38 of Exhibit A to the Penn Affidavit. On February 10, 2014, Mr. Penn, accompanied by his defense attorneys at the time, voluntarily surrendered at the New York County District Attorney's Office.  *See* 2/10/2014 Tr. at pgs. A. 8-20 of Exhibit A to the Penn Affidavit.

Although Mr. Penn's defense counsel at the time, had been communicating and negotiating with the prosecution prior to his voluntary surrender, the record does not reflect that counsel ever raised the issue of larceny being inapplicable, under New York law, pursuant to *Zinke*, in light of Mr. Penn's ownership interest through CASO G.P. LLC.  At the arraignment and bail, the record shows that defense counsel: (a) advised the Court, given an incomplete statement of facts, (b) based on a complaint with false statements, and (c) that his alleged actions would "likely" amount to a Class B felony conviction of larceny.  At the arraignment and bail hearing, Mr. Penn's counsel stated to the Court, without advising the Court of the *Zinke* precedent, that:

> "it was likely he would face mandatory state prison if convicted on a charge because more than $1 million is a Class B felony."

Transcript of February 10, 2014 Proceedings ("2/10/2014 Hearing Transcript") at pgs. A. 6-7, 13-14 of Exhibit A to the Penn Affidavit (*emphasis added*).  Mr. Penn's bail was set at

$2,500,000.00 and Mr. Penn was unable to post bail, and he remained incarcerated until his release on parole. His trial court defense counsel's statement on the record is in conflict with New York law pursuant to *Zinke* and was capable of being proved false. Additionally, through the appeals process, Mr. Penn and his *Pro Bono* Appeal counsel asserted that the indictment and conviction were unlawful and remain unlawful.

Even though more than one year passed between the date of Mr. Penn's arrest and the date of his plea agreement, the record reflects that Mr. Penn's defense counsel at the time, made no effort to obtain discovery or raise viable defenses on the record. Other than a notice of appearance and sentencing packet comprising letters of support, Mr. Penn's defense counsel did not file any documents with the court. Mr. Penn's defense attorney at the time never filed an *omnibus* motion, which pursuant to N.Y. CPL § 255.20, must be filed within 45 days of arraignment. Mr. Penn's counsel neither requested nor obtained the search warrant that was executed against Mr. Penn's offices, or the affidavit in support of obtaining the search warrant. Although, the vast majority of the physical evidence belonged to Mr. Penn and was seized from Mr. Penn's offices, counsel never requested an opportunity to review the legal sufficiency of the search warrant. Since a basic *omnibus* motion was not filed on behalf of Mr. Penn, he was not afforded the same opportunity as his co-defendant to review the search warrant application and determine if a motion to controvert the warrant would have been appropriate. In the absence of the search warrant application in Mr. Penn's record on appeal, it is impossible to determine whether a motion to controvert the warrant and/or suppress the physical evidence would have had a meaningful effect Mr. Penn's case. Most importantly, counsel never advised Mr. Penn or the Court of the longstanding decision and authority confirmed in *Zinke*, nor did he file a motion to dismiss after requested by Mr. Penn.

### III.   THE FORFEITURE OF MR. PENN'S OWNERSHIP INTEREST IN THE PARTNERSHIP IN CONFLICT WITH NEW YORK STATE LAW

Significantly, as part of his plea agreement in this case, Mr. Penn, as an individual, was required to forfeit his beneficial ownership interest in the right to the Partnership's distributions. The Forfeiture Agreement states:

> I, Lawrence Edward Penn III, hereby forfeit my entire interest, economic or otherwise, whether personally or through entities that I control either in whole or in part, or in which I have an interest. . .. In addition, I, Lawrence Edward Penn III, in my capacity as the sole member and managing member of Camelot Acquisitions:  Secondary Opportunities G.P., LLC, ("Former General Partner") hereby (i) forfeit the Former General Partner's interest, economic or otherwise ... as of April 20, 2015.

*See* Forfeiture Agreement filed on April 20, 2015 at pgs. A. 276-279 of Exhibit A to the Penn Affidavit.  The trial court required that Mr. Penn forfeit his ownership interest in the Partnership as part of his plea agreement.

> Court: And I indicated in a phone call to the parties that after reviewing all the paperwork, what the Court would be willing to do is, and after all our discussions, 2-to-6 with restitution order and a relinquishment of the interest in the funds. So how do you want to proceed?

*See* 1/7/2015 Tr. at pg. A. 78 of Exhibit A to the Penn Affidavit. After the trial court made the plea offer contingent upon relinquishment of Mr. Penn's ownership interest in the Partnership, defense counsel at the time and the trial court had off-the-record conversations concerning Mr. Penn's ability to retain his interest in the Partnership.

> Court: Good  morning, Mr. Penn. So, the parties and I had had [sic] a discussion in the back, and there was just an issue with regard to the defendant's ability to retain any sort of interest in the company [sic], and I indicated to the parties after a lengthy

> discussion that I would think about it and get back to the parties
> before the next court appearance, which is down for February
> 23rd for possible disposition on consent. I will either call your
> or shoot an email to everyone.

*See* 11/26/2015 Tr. at pg. A. 82 of Exhibit A to the Penn Affidavit. Defense counsel did

not raise any objection on the record concerning Mr. Penn's ability to retain an interest in the

Partnership.

## IV.   THE APPEAL PROCESS: U.S. SUPREME COURT PRECEDENT AND NEW YORK STATE LAW OVERLOOKED

Within weeks after being released from prison, on March 3, 2016, Mr. Penn filed a *Pro*

*Se* 440.10 Motion to vacate his conviction, stating that his conviction of larceny was unlawful

based on his role as the General Partner and a joint or common beneficial owner of the

Partnership.  Perkins Coie, LLP as *Pro Bono* appeal counsel, filed a supplemental memorandum

of law in support of his 440.10 Motion to vacate his conviction.  *See* 4/25/2016 Tr. at pgs. A.

101-105 of Exhibit A to the Penn Affidavit.  On or about July 11, 2016, *without a hearing on the*

*merits*, the motion court denied Mr. Penn's 440.10 Motion. at pgs. A. 3-5 of Exhibit A to the

Penn Affidavit.   The question of whether Mr. Penn forfeited that right to appeal was never

considered by the 440.10 Motion Court.  The question of Mr. Penn's ownership and the State's

ability to charge or convict under New York State larceny statute was never considered by the

440.10 Motion Court.

On August 11, 2016, Mr. Penn, through his *Pro Bono* appeal counsel sought leave from

the New York State Supreme Court Appellate Division, First Department to appeal the denial of

the 440.10 Motion.  In the event leave was granted, Mr. Penn also sought permission to combine

his direct appeal with the appeal of the 440.10 Motion. On January 3, 2017, Judge Karla

Moskowitz granted Mr. Penn's application for leave to appeal the denial of the 440.10 Motion. Judge Moskowitz *certified* that "questions of law or fact are involved which ought to be reviewed." *See* Certificate Granting Leave at pg. A. 6 of Exhibit A to the Penn Affidavit. Judge Moskowitz also granted Mr. Penn permission to consolidate his direct appeal with the appeal of the denial of the 440.10 Motion. Oral arguments in front of the New York State Supreme Court Appellate Division, First Department were held on September 5, 2017. On September 26, 2017, the New York State Supreme Court Appellate Division First Department, affirmed the conviction, finding that "[b]y pleading guilty, [Mr. Penn] automatically forfeited appellate review of his claim that he was an owner of the stolen property and thus could not be guilty of larceny." *People v. Penn,* 153 A.D.3d 1171 (1st Dep't 2017) (citing *People v Levin,* 57 N.Y.2d 1008 (1982) ("Any issue concerning the proper interpretation or application of the statute was forfeited by the guilty plea.")).

Refusing to address or hear the argument that ***one cannot plead guilty to conduct that does not constitute a crime,*** on October 24, 2017, Mr. Penn, through his *Pro Bono* appeal counsel sought leave from the Court of Appeals of the State of New York pursuant to Criminal Procedure Law § 460.20 to appeal from the order of the New York State Supreme Court Appellate Division, First Department. On January 31, 2018, the application for leave to the Court of Appeals of New York State was denied as stated above in Procedural history. Mr. Penn, through his *Pro Bono* appeal counsel sought Request for Reconsideration of Leave Application from the Court of Appeals of the State of New York on March 2, 2018. The application was based on the merits of the case and the U.S. Supreme Court's decision in the seminal case *Class v. United States.* Both compel a reversal to the Court of Appeals in situations similar to this case and as stated above in *Class,* confirmed over 150 years of decisions that

guilty pleas do not bar a criminal defendant from challenging the constitutionality of a conviction, particularly "where the claim implicates the very power of the State to prosecute." On May 30, 2018, the Request for Reconsideration of the Leave application to the Court of Appeals of New York State was denied as stated above in procedural history. To date, the U.S. Supreme Court's decision in *Class v. United States* (2018), the U.S. Supreme Court's common law precedent cited in the *Blackledge-Menna* doctrine, and the Court of Appeals of the State of New York's common law precedent *People v. Zinke,* (1990) have not been properly considered in the appeal.

## LEGAL STANDARDS OF REVIEW

### I.    LEGAL STANDARD UNDER ALL WRITS ACT: 28 U.S.C. § 1651

The authority to grant a Writ of Error Coram Nobis is conferred by the All Writs Act, which permits "courts established by Act of Congress" to issue "all writs necessary or appropriate in aid of their respective jurisdictions." The All Writs Act provides that federal courts may issue all writs necessary and agreeable to usages and principles of law. *See* 28 U.S.C. § 1651(a). In determining what auxiliary writs are "agreeable to usages and principles of law" within meaning of 28 U.S.C. § 1651(a), the court should look first to common law. *See United States v. Hayman*, 342 U.S. 205 (1952). *Coram Nobis* is therefore an "extension of the original proceeding during which the error allegedly transpired." *See United States v. Denedo*, 556 U.S. 904, 911 (2009). To receive *coram nobis* relief, a movant must demonstrate that (1) "there are circumstances compelling such action to achieve justice," (2) "sound reasons exist for failure to seek appropriate earlier relief," and (3) the defendant "continues to suffer legal consequences from his conviction that may be remedied by granting of the writ." *See Foont v.*

*United States*, 93 F.3d 76, 79 (2d Cir. 1996). Coram nobis relief "should be allowed... only under circumstances compelling such action to achieve justice" – namely (a) curing of "errors 'of the most fundamental character'" when (b) "no other remedy [is] then available" and (c) "sound reasons [exist] for failure to seek appropriate earlier relief." *See Morgan*, 346 U.S. at 510.

In context, the error of the "most fundamental character" language itself referred to "errors of fact... where the errors were of the most fundamental character, that is, such as rendered the proceeding itself irregular and invalid." *See United States v. Mayer*, 235 U.S. 55, 69 (1914). "Coram Nobis should be available only in extraordinary cases, but that finality must bow to accuracy where the "record makes plain a right to relief." *Morgan*, 346 U.S. at 515. "Otherwise," wrote the Court, "a wrong may stand uncorrected which the available remedy would right." The majority noted that the "wrong" of an unlawful conviction is not only an abstract injustice in the system, but also a wrong were "the results of the conviction may persist" for the convicted person himself. "Subsequent convictions may carry heavier penalties," the Court wrote; "civil rights may be affected." In other words, unlawfully convicted people may suffer on-going harm from their unlawful convictions; the effects of a past conviction may persist to the present. *See Morgan*, 346 U.S. at 512. Those pursuing Coram Nobis relief, the Court stated, "must demonstrate that the judgment of conviction produced lingering civil disabilities (collateral consequences) ...unique to criminal convictions." Such disabilities, according Easterbrook, "include loss of the rights to vote, hold occupational licenses (including law licenses), and...." *See United States v. Keane,* 852 F.2d 199, 203 (7th Cir. 1988). The circuit court reviewed the "lingering civil disability" requirement first announced in *Keane* and expounded in *Bush* and discerned three requirements: (1) "the disability must be causing a present harm; it is not enough to raise purely speculative harms or harms that occurred

completely in the past," (2) "the disability must arise out of the erroneous conviction", and (3) "the potential harm to the petitioner must be more than incidental." *See United States v. Keane.*

Constitutional standing requires that a plaintiff show that he is suffering a "distinct and palpable" injury-in-fact, and not merely a "conjectural" or "hypothetical" harm. *Whitmore v. Arkansas*, 495 U.S. 149, 154 (U.S. 1990). In addition to an injury-in-fact, a litigant must also be able to show that such injury is traceable or caused by the defendant, and that the court has the power to provide redress for the injury. *E.g.*, *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000). Two well established principles are to be kept in mind: (1) the writ of error *Coram Nobis* lies only where no other remedy is available, which would lead to a discrepancy in rulings as to grounds for granting the writ, due to the variations in statutory and common law procedural rules of appeals and petitions for new trials, and (2) granting of the writ is in the sound discretion of the court, in many jurisdictions, and, reversal will be ordered only where clear abuse is shown. It is well settled that where a plaintiff can demonstrate cause for the default and actual prejudice because of the alleged violation of federal law, or "demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice" a Writ of Error is justified. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *See also Lee v. Kemna*, 534 U.S. 362, 375 (2002); *Cotto v. Herbert*, 331 F.3d 217, 238 (2d Cir. 2003); *Faison*, 2009 U.S. Dist. LEXIS 115306, 2009 WL 4729931, at *10.

Any power granted by 28 U.S.C. § 1651(a) to federal courts to issue writs of Coram Nobis comprehends power of the district courts to take cognizance of motions in the nature of Coram Nobis. Writ of Error Coram Nobis was available at common law to correct errors of fact; it was allowed without limitation of time for facts that affect validity and regularity of judgment, and was used in both civil and criminal cases. Continuation of litigation after final judgment and

exhaustion or waiver of any statutory right of review should be allowed through remedy in nature of Coram Nobis only under circumstances compelling such action to achieve justice. Additionally, deprivation of Sixth Amendment right to counsel and of due process justify issuance of Writ of Error Coram Nobis to remedy such defect. *United States v. Rife,* 514 F. Supp. 368 (1981, SD Ohio). 28 U.S.C. § 1651 empowers the District Court to issue injunctions preventing states from commencing any action or proceeding against defendants in multidistrict litigation. *See In re Baldwin-United Corp. (Single Premium Deferred Annuities Ins. Litigation),* 770 F.2d. 328 (2nd Cir. 1985). All Writs Act (28 U.S.C. § 1651(a)) invests federal courts with power essentially equitable and, as such, not generally available to provide alternatives to other adequate remedies at law. *See Clinton v. Goldsmith,* 526 U.S. 529 (1999).

## II.   REQUIREMENT TO EXHAUST ALL AVAILALBLE STATE REMEDIES

Writ of Error Coram Nobis is not a substitute for an appeal and relief under writ is strictly limited to those cases in which errors of most fundamental character have rendered proceeding itself irregular and invalid. To obtain Coram Nobis relief petitioner must demonstrate that (1) there are circumstances compelling such action to achieve justice, (2) sound reasons exist for failure to seek appropriate earlier relief, and (3) petitioner continues to suffer legal consequences from his conviction that may be remedied by granting of writ. *Cisse v. United States,* 330 F. Supp.2d 336 (S.D.N.Y. 2004). Under the All Writs Act (28 U.S.C. § 1651(a)) the power of federal courts extends, under appropriate circumstances, to persons who, though not parties to original action or engaged in wrongdoing, are in position to frustrate implementation of court order or proper administration of justice, and encompasses even those who have not taken any affirmative action to hinder justice. *See United States v. New York Tel. Co.,* 434 U.S. 159

(1977). Federal Courts have jurisdiction under 28 U.S.C. § 1651 to entertain petition for relief in nature of Writ of Error Coram Nobis where a petitioner exhausted state remedies in attempt to overturn state criminal convictions which have collateral effects. *See Peterson v. Missouri*, 355 F. Supp. 1371 (1973).

## III.   REQUIREMENT OF SUBSTANTIAL SHOWING TO BE FULFILLED AND THE REQUIREMENT FOR A STAY AT COMMON LAW

A federal court may grant relief if the petitioner establishes: (1) that the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." *See Hancock v. Rivera*, 2012 U.S. Dist. LEXIS 106026). A state court's decision is "contrary to" clearly established Federal law if (2) the state court arrives at a conclusion opposite or "applies a rule that contradicts the governing law set forth in the United States Supreme Court's cases" on a question of law or (3) the state court confronts facts that are "materially indistinguishable" from a relevant Supreme Court precedent and arrives at a result opposite to [that reached by the Supreme Court of the United States]." *See Williams v. Taylor*, 529 U.S. 362, 405 (2000). As to the "unreasonable application" prong, "a federal court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *See Id.* at 411. A state court decision involves an "unreasonable application" of Federal Supreme Court precedent if (1) "the state court identifies the correct legal rule from [Federal Supreme Court] cases but unreasonably applies it to the facts of the particular state case" or (2) "the state court either unreasonably extends a legal principle from [Federal Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new

-21-

context where it should apply." *See Id.* at 407.  Whether the federal district court is proceeding under the All Writs Act (28 U.S.C. § 1651) or not, the district court has no license to ignore the requirement that it make findings of fact and state reasons for issuance of a writ, pursuant to Federal Rules of Civil Procedure, Rule 52.

The entry of stay is appropriate under 28 U.S.C. § 1651; as (1) state court's decision conflicts with Supreme Court's prior decisions, (2) there is reasonable probability that the case would warrant certiorari to Supreme Court, and (3) "will cause irreparable harm" [to a person] "that is intolerable" under the [the Constitution]. *See CBS Inc. v. Davis*, 510 U.S. 1315 (1994). Interference by injunction by federal courts with important state activities should be avoided *except where clearly required to give effect to supreme federal law. See Mills v. Lowndes*, 26 F. Supp. 792 (1939, DC Md).  The All Writs Act vest federal courts and their appointed officers with authority to enforce consent decree against nonparty to a decree, if appropriate procedures are followed and applicable substantive law is observed.  Where federal courts had first acquired jurisdiction of subject matter of cause, it could enjoin parties from proceeding in state court of concurrent jurisdiction where the effect of the state court action would be to defeat or impair jurisdiction of federal court. *See Western Fruit Growers, Inc. v. United States,* 124 F.2d 381 (9th Circuit 1941).  Under the All Writs Act, 28 U.S.C. § 1651(a), federal courts have the power to effectuate injunctions which may extend to persons who, though not parties to the original action or engaged in wrongdoing, are in position to frustrate implementation of court orders or proper administration of justice. *See Catskill Mts. Chapter of Trout Unlimited, Inc. v. City of New York,* 244 F. Supp. 2d 41 (N.D.N.Y. 2003), *affirmed in part and remanded* in part on other grounds 451 F.3d 77 (2nd Cir. 2006).

# ARGUMENT

## I.   THE FACTS, THE RECORD AND THE LAW SHOW THRESHOLD REQUIREMENTS HAVE BEEN MET FOR RELIEF UNDER 28 U.S.C. § 1651

The facts, the documents in the record, and the law clearly show that threshold requirements have been met for relief to grant a Writ of Error *Coram Nobis* and permits "courts established by Act of Congress" to issue "all writs necessary or appropriate in aid of their respective jurisdictions." *See* 28 U.S.C. § 1651(a). The facts demonstrate that in this case (1) "there are circumstances compelling such action to achieve justice," (2) "sound reasons exist for failure to seek appropriate earlier relief," and (3) that Mr. Penn "continues to suffer legal consequences from his conviction that may be remedied by granting of the writ." *See Foont v. United States*, 93 F.3d 76, 79 (2d Cir. 1996). *Coram nobis* is therefore an "extension of the original proceeding during which the error allegedly transpired." *See United States v. Denedo*, 556 U.S. 904, 911 (2009). In this case there are: (1) circumstances compelling such action to achieve justice because of evidence of an unlawful conviction, (2) there is no statute of limitations for *Coram Nobis* relief, and the record shows "sound reasons exist for failure to seek appropriate earlier relief," which in this case the sound reasons are the exhaustion of all state level appeals processes. *See Foont*, 93 F.3d, at 79, and (3) the Petitioner continues to suffer legal consequences, as discussed below from his conviction that may be remedied by granting of the Writ of Error Coram Nobis.

Additionally, the record, and documents in the record demonstrate actual prejudice because of the failure to act under federal law established by U.S. Supreme Court's decision in *Class v. United States,* 138 S. Ct. 798, 800 (2018). The *Class* decision and the associated precedents supersede and undermine *People v. Levin* (1982) and the decision of the Appellate

Division, First Department in Mr. Penn's case demonstrate a failure to consider the claims which could result in a "fundamental miscarriage of justice." Moreover, there are circumstances compelling action to achieve justice based on the Court of Appeals of the State of New York's precedent case *People v. Zinke* (1990). In *Zinke*, the Court of Appeals of the State of New York ruled (1) that partnership defalcations were to be held in civil courts outside of the criminal larceny penal law, and (2) joint or common owners cannot be charged or found guilty of larceny. In this instant matter, the record and documents conclusively demonstrate that Mr. Penn was a joint or common owner of the rights to distributions from the Partnership he established, was charged and pled guilty to larceny in conflict with New York law, in short, a crime that does not exist for the circumstances.

The New York State courts established a law which outlines Mr. Penn's constitutional rights, immunities and privileges under the law. *See Bousley v. United States*, 523 U.S. 614, 623 (1998) (actual innocence is demonstrated where "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted") (quotation omitted); *See also United States v. Dickler*, 64 F.3d 818 (3d Cir. 1995) ("relevant conduct under the Guidelines must be criminal conduct"); *See also United States v. Dove*, 247 F.3d 152, 155 (4th Cir. 2001) (same); *See also United States v. Dickler*, 64 F.3d 818, 830-31 (3d Cir. 1995). In the *Zinke* precedent, the Court, stated Justice Kaye, went as far as to prohibit larceny conviction of partners, joint or common owners, tenants in partnership even when they *steal* rendering Mr. Penn's plea void *ab initio* as an element of larceny. *See United States v. Loschiavo*, 531 F.2d 659, 666 (2d Cir. 1976) (vacating conviction where record revealed no proof of element of bribery required by precedent decided after petitioner had exhausted direct appeals) - the record "discloses no proof

what[so]ever of [an] element of the crime charged," In matters similar to the Petitioner's case, the district court granted the petition and vacated . . . . the plea and conviction, holding that:

> if "a conviction and punishment are for an act that the law does not make criminal, there can be no room for doubt that such a circumstance inherently results in a complete miscarriage of justice and presents exceptional circumstances that justify collateral relief."

*See United States v. Reguer.* 901 F. Supp. 515 at 520 (1995) (*citing Davis v. United States,* 417 U.S. 333 (1974)) (internal quotation marks and alterations omitted).

By not hearing the merits of the case, the Court of Appeals of the State of New York arrived at the result opposite to the U.S. Supreme Court's precedent in *Class* and the *Blackledge-Menna* doctrine which dictate that the case be reversed to the Court of Appeals to heard on the merits. The Court of Appeals action in not hearing the case on the merits, constitutes an unreasonable application of the federal common law confirmed by the U.S. Supreme Court in *Class.* In *Class,* the Supreme Court clarified that "where the claim implicates the very power of the State to prosecute the defendant, a guilty plea cannot by itself bar it." *Class,* 138 S. Ct. 798, 800-01. When reversing the intermediary appellate court's decision in *Class,* the Supreme Court explicitly refers to, and re-affirms, its rulings in *Blackledge v. Perry,* 417 U.S. 21 (1974) and *Menna v. New York,* 423 U.S. 61 (1975), which both held that a defendant who pleads guilty can still raise on appeal any constitutional claim. *Class* is not limited to federal convictions, as the opinion cites both state and federal cases, and refers to the "view of the nature of a guilty plea" expressed by "federal and state courts throughout the 19th and 20th centuries." Simply put, where the appellate claim implicates "the very power of the State" to prosecute the defendant, a guilty plea cannot by itself bar it. *Blackledge,* 417 U. S. at 30. Mr. Penn argued on appeal that the State did not have the authority to charge him with larceny considering his joint or common

beneficial ownership in the limited partnership at issue and the record clearly shows that he was an owner. The U.S. Supreme Court emphasizing the 150-year-old concept in *Class* citing that, "[i]f the facts alleged and admitted do not constitute a crime against the laws of the Commonwealth, the defendant is entitled to be discharged." *Id.* at 5. (*citing Commonwealth v. Hinds,* 101 Mass. 209, 210 (1869)).

## II.   THE PETITION HAS BEEN SUBMITTED WITHOUT DELAY AND SOUND REASON FOR FAILURE TO SEEK EARLIER RELIEF IS BECAUSE THE PETITIONER HAS JUST EXHAUSTED ALL STATE LEVEL APPEALS

A Writ of Error Coram Nobis "is . . .. authorized under the All Writs Act, 28 U.S.C. § 1651(a), generally sought to review a criminal conviction where a motion under 28 U.S.C. § 2255 is unavailable because petitioner is no longer serving a sentence." *See Porcelli v. United States,* 404 F.3d 157, 158 (2d Cir. 2005) (quoting *United States v. Morgan,* 346 U.S. 502, 511, (1954)). The record shows that **Mr. Penn is no longer in custody**, has served his 2-to-6-year sentence from February 10, 2014 to February 10, 2016 and was released from parole based on merit on February 10, 2017. "*Coram Nobis* is essentially a remedy of last resort for petitioners who are no longer in custody pursuant to a criminal conviction and therefore cannot pursue direct review or collateral relief by means of a writ of habeas corpus." *See Fleming,* 146 F.3d at 89-90. A Writ of Error *Coram Nobis* is not, however, "a substitute for appeal, and relief under the writ is strictly limited to those cases in which errors of the most fundamental character have rendered the proceeding itself irregular and invalid." *See Foont v. United States,* 93 F.3d 76, 78 (2d Cir. 1996) (internal quotation marks and citations omitted). *See Nicks v. United States,* 955 F.2d 161, 167 (2d Cir. 1992) (opining that a Writ of Error *Coram Nobis* should be granted "only where extraordinary circumstances are present").

The record shows that Mr. Penn has exhausted all New York State level remedies and appeals processes.   Additionally, this petition is timely without delay having been submitted within **30 business days after the Court of Appeals of the State of New York's denial of motion for reconsideration of the application for leave to appeal**. *See* Denial of Leave Application, attached as Exhibit E to Penn Affidavit, and Denial Request for Reconsideration of Leave Application, attached as Exhibit G to Penn Affidavit.  Moreover, there is no time limit for filing for a Writ of Error Coram Nobis. *See Excell v. New York*, 2003 U.S. Dist. LEXIS 24126, 01-CV-3073, 03-Misc-0066, 2003 WL 23185749 at *13 (E.D.N.Y. Oct. 30, 2003) ("Option to pursue a writ of *Coram Nobis* is not foreclosed since there is no time limit for filing such a writ."), *citing People v. Bachert*, 69 N.Y.2d 593 (1987); *Perez v. Greiner*, 2003 U.S. Dist. LEXIS 18995, 02 Civ. 1436 (JCF), 2003 WL 22427759 at *7 (S.D.N.Y. Oct. 23, 2003) (Report and Recommendation) (same); *Pena v. Fischer*, 2003 U.S. Dist. LEXIS 7240, 00 Civ. 5984 (HB)(MHD), 2003 WL 1990331 at *12 (S.D.N.Y. Apr. 30, 2003) ("there is no time limit for moving for a Writ of Error Coram Nobis".

A two-step analysis is used to determine whether a claim has been exhausted:  First, the petitioner must have fairly presented to an appropriate state court the same federal constitutional claim that he now urges upon the federal courts.   Second, having presented his federal constitutional claim to an appropriate state court, and having been denied relief, the petitioner must have utilized all available mechanisms to secure [state] appellate review of the denial of that claim. *Klein v. Harris*, 667 F.2d 274, 282 (2d Cir. 1981) (citations omitted); *accord Boyd v. Hawk*, 1996 U.S. Dist. LEXIS 21279, 94 Civ. 7121 (DAB), 1996 WL 406680 at *3 (S.D.N.Y. May 31, 1996); *Tung v. New York State Dep't of Corrs.*, 1993 U.S. Dist. LEXIS 4259, CV 91-4364, 4365 (RJD), 1993 WL 113302 at *2 (E.D.N.Y. March 31, 1993); *Snype v. Hoke*, 728 F.

Supp. 207, 210 (S.D.N.Y. 1990). "In reviewing a petition for the writ, a court must presume that the proceedings were correct, and the burden of showing otherwise rests on the petitioner." *See United States v. Mandanici*, 205 F.3d 519, 524 (2d Cir. 2000) (*citing Nicks*, 955 F.2d at 167).

To satisfy the first element of the exhaustion test, a petitioner must fairly present his federal claim to the state courts. In *Daye v. Attorney Gen.*, 696 F.2d 186, 194 (2d Cir. 1982) (*en banc*), the Court of Appeals set forth the methods by which a federal claim can be fairly presented to a state court: The ways in which a state defendant may fairly present to the state courts the Constitutional nature of his claim, even without citing chapter and verse of the Constitution, include (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation. To satisfy the second step of the analysis, "[a] petitioner must present his federal constitutional claims to the highest court of the state before a federal court may consider the merits of the petition." *See Grey v. Hoke*, 933 F.2d 117, 119 (2d Cir. 1991). *See also O'Sullivan v. Boerckel*, 526 U.S. 838, 847-48, (1999).

The record and facts presented show that (a) Mr. Penn includes constitutional analysis through the *Class* precedent, (b) Mr. Penn relies on a state case, specifically, *People v. Zinke* (1990) a precedent directly on point with his case, (c) asserts his claim with particularity and outlines a specific right, here, the right not to be charged or found guilty of larceny as a joint or common owner as he was, and (d) outlines the facts in the procedural history and statement of facts above, well within the "mainstream of constitutional litigation." As outlined below, the Petitioner has exhausted all state level remedies and appeals.

### A.    New York State CPL § 440.10:  Motion to Vacate Judgment

Under New York State Criminal Procedure Law § 440.10 (N.Y. CPL § 440.10) Motion to Vacate Judgment is the New York State Supreme Court (state level trial court or lower court) version of a Writ of Error Coram Nobis designed to provide a first step in the appeal process.  On March 3, 2016, Mr. Penn filed a *Pro Se* 440.10 Motion to vacate his conviction, stating that his conviction of larceny was unlawful based on his role as the General Partner and a joint or common owner of the Limited Partnership.  Mr. Penn obtained Perkins Coie, LLP as *Pro Bono* appeal counsel, who filed a supplemental memorandum of law in support of his 440.10 Motion to vacate his conviction stating it was unlawful.  *See* 4/25/2016 Tr. at pgs. A. 101-105 of Exhibit A to the Penn Affidavit.  On or about July 11, 2016, *without a hearing on the merits*, the motion court denied Mr. Penn's 440.10 Motion. *See* pgs. A. 3-5 of Exhibit A to the Penn Affidavit. Additionally, the question of whether Mr. Penn forfeited that right to appeal was never considered by the 440.10 Motion Court.

### B.    New York State CPL § 460.15:  Appeal to New York's Intermediate Court

Under New York State Criminal Procedure Law § 460.15 (N.Y. CPL § 460.15) a criminal Defendant-Appellant, can seek permission to directly appeal to the New York State Supreme Court Appellate Division, First Judicial Department (state mid-level appeals court) from the order of the New York State Supreme Court as well as appeal the N.Y. CPL § 440.10 Motion to vacate judgment.  On August 11, 2016, Mr. Penn, through his *Pro Bono* appeal counsel sought leave from the New York State Supreme Court Appellate Division, First Department to appeal the denial of the 440.10 Motion.  In the event leave was granted, Mr. Penn also sought permission to combine his direct appeal with the appeal of the 440.10 Motion. On January 3, 2017, Judge Karla Moskowitz granted Mr. Penn's application for leave to appeal the

denial of the 440.10 Motion.   Judge Moskowitz *certified* that "questions of law or fact are involved which ought to be reviewed." *See* Certificate Granting Leave at pg. A. 6 of Exhibit A to the Penn Affidavit.  Judge Moskowitz also granted Mr. Penn permission to consolidate his direct appeal with the appeal of the denial of the 440.10 Motion.   Oral arguments in front of the New York State Supreme Court Appellate Division, First Department were held on September 5, 2017.   On September 26, 2017, the New York State Supreme Court Appellate Division, First Department affirmed the conviction holding that "[b]y pleading guilty, [Mr. Penn] automatically forfeited appellate review of his claim that he was an owner of the stolen property and thus could not be guilty of larceny." *People v. Penn,* 153 A.D.3d 1171 (1st Dep't 2017) (citing *People v Levin,* 57 N.Y.2d 1008 (1982) ("Any issue concerning the proper interpretation or application of the statute was forfeited by the guilty plea.")).

The Appellate Division, First Department's ruling is not only in conflict with *Class* but also with their own colleague, Judge Moskowitz's certification granting leave to appeal to the Appellate Division, First Department and shows that the issues involved in this petition are debatable among jurists of reason and could be resolved in a different manner.  *See* Certificate Granting Leave at pg. A. 6 of Exhibit A to the Penn Affidavit.  The Second Circuit has found the "substantial showing" requirement to be fulfilled "'if the issues involved in a petition are debatable among jurists of reason, could be resolved in a different manner, or adequate to deserve encouragement to proceed further.'"  *See Thornton v. Reynolds,* 2001 U.S. Dist. LEXIS 10435, at *3 (S.D.N.Y. July 26, 2001), *quoting Lucidore v. New York State Div. of Parole,* 209 F.3d at 112, *citing Barefoot v. Estelle,* 463 U.S. 880 at 893 n. 4. *Word v. Lord,* U.S. Dist. LEXIS 18031 (S.D.N.Y. Sept. 23, 2002).

**C.     New York State CPL § 460.20:  Appeal to New York State Court of Appeals**

Under New York State Criminal Procedure Law § 460.20 (N.Y. CPL § 460.20) of the Criminal Procedure Law, a criminal Defendant-Appellant can seek permission to directly appeal to the New York State Court of Appeals, the highest state appellate court.  On October 24, 2017, Mr. Penn, through his *Pro Bono* appeal counsel, sought leave from the Court of Appeals of the State of New York pursuant to N.Y. CPL § 460.20 to appeal from the order of the New York State Supreme Court Appellate Division, First Department.  On January 31, 2018, the application for leave to the Court of Appeals of New York State was denied.  *See* Denial of Leave Application, attached as Exhibit E to the Penn Affidavit.  Mr. Penn, through his *Pro Bono* appeal counsel sought Request for Reconsideration of Leave Application from the Court of Appeals of the State of New York on March 2, 2018.  The application was based on the merits of the case and the U.S. Supreme Court's common law precedent, *Class v. United States,* which dictates a reversal to the Court of Appeals in these situations.

Specifically, the *Class* precedent confirmed over 150 years of decisions that guilty pleas do not bar a criminal defendant from challenging the constitutionality of a conviction, particularly "where the claim implicates the very power of the State to prosecute."  On May 30, 2018, the Request for Reconsideration of the application for leave to the Court of Appeals of New York State was denied.  *See* Denial Request for Reconsideration of Leave Application, attached as Exhibit G to the Penn Affidavit.  To date, the U.S. Supreme Court's decision in *Class v. United States* (2018), the U.S. Supreme Court's reliance on the *Blackledge-Menna* doctrine, and the Court of Appeals of the State of New York's common law precedent *People v. Zinke* (1990) have been considered in the appeal processes.  The Court of Appeals of New York State has unreasonably refused to extend the U.S. Supreme Court decision in *Class* to this case where

it should apply.  District courts should grant a Writ of Error Coram Nobis where a defendant has "sound reasons exist for failure to seek appropriate earlier relief," the second prong of the Legal Standard for Writ of Error Coram Nobis.  *See* Judge Loretta A. Preska's Order in *Rajaratnam v. United States*, 15 Civ. 5325 (S.D.N.Y. 2017), Document 13 (LAP) (*quoting Morgan* and *Foont*) (LAP).

III.    **THE RECORD SHOWS THERE ARE CIRCUMSTANCES COMPELLING SUCH ACTION TO ACHIEVE JUSTICE AND THERE IS MERIT FOR CORAM NOBIS RELIEF BASED ON LEGAL STANDARDS OF REVIEW**

A.    **The Record Outlines A "Substantial Showing" Warranting Relief because Mr. Penn was a Joint or Common Owner with rights to Distributions from the Partnership making the state level charge and conviction unlawful**

The record in this case and the documentary evidence submitted in support of the 440.10 Motion and Appellate Division, First Department appeal unequivocally show that Mr. Penn had an ownership interest in the rights to distributions from the partnership that he allegedly stole. As such, Mr. Penn should not have been charged with grand larceny under New York law.  By not looking at the merits of the case, the New York state trial and appellant courts failed to consider the facts and the purpose of the underlying statute and well-settled case law.  First, and most obviously, Mr. Penn could not have forfeited ownership interest in property that he did not own.  As part of his plea agreement Mr. Penn was required to pay restitution *and* forfeit his ownership interest in the Partnership.  *See* Forfeiture Agreement at pgs. A. 276-278 of Exhibit A to the Penn Affidavit.  To do so, Mr. Penn necessarily had to own an interest that he could subsequently forfeit.  Second, limiting Mr. Penn's ownership interest to the narrow question of whether he, as an individual, was the General Partner of the Partnership completely overlooks the express words of the statute preventing joint and common owners of property from being

charged with larceny, and the principles explained by the Court of Appeals in *Zinke*. Third, evidence in parallel state proceedings show that Mr. Penn was the joint or common beneficial owner the rights of distributions from the partnership given his 100% sole owner of CASO G.P. LLC. *See* the Amended and Restated Agreement CASO G.P. LLC Agreement, at pg. A. 122 of Exhibit A to the Penn Affidavit; *See* the Subscription Agreement for CASO G.P., attached as of Exhibit B to the Penn Affidavit. *See* CASO G.P. LLC K-1s, attached as Exhibit I to the Penn Affidavit.

The record clearly shows, Mr. Penn was not only the beneficial owner but also performed all the duties and obligations of the General Partner, including issuing capital calls, entering contracts, managing investments and delegating tasks. *See generally* the Affidavit of Lawrence E. Penn III, In Support of § 440.10 Motion to Vacate the Conviction, and accompanying Exhibits 1-13, at pgs. A. 106-297 of Exhibit A to the Penn Affidavit. Mr. Penn had a beneficial ownership in interest in the Partnership. In fact, as part of his guilty plea in this case, Mr. Penn was required to forfeit his ownership interest in the Partnership, "whether personally or through entities that [he] control[s] either in whole or in part, or in which [he has] an interest." *See* Forfeiture Agreement filed on April 20, 2015 at pgs. A. 276-279 of Exhibit A to the Penn Affidavit. Furthermore, under Delaware law, an LLC "shall possess and may exercise all the powers and privileges granted by [among other things] . . . its' limited liability company agreement." *See* 6 Del. C. § 18-801. In this case, the LLC agreement states that CASO G.P. LLC was formed for the purpose of "imputing 100% beneficial ownership to Lawrence E. Penn

larceny for misappropriating partnership funds. *See People* v. *Zinke,* 76 N.Y.2d 8, 9 (1990). As stated above in procedural history and statement of facts section, the Appellate Division, First Department's ruling conflicts with their own colleague, Judge Moskowitz's *certification* granting leave to appeal to the Appellate Division, First Department and shows that the issues involved in this petition are debatable among jurists of reason and could be resolved in a different manner. The Second Circuit has found the "substantial showing" requirement to be fulfilled "'if the issues involved in a petition are debatable among jurists of reason, could be resolved in a different manner, or adequate to deserve encouragement to proceed further.'" *See Thornton v. Reynolds*, 2001 U.S. Dist. LEXIS 10435, at *3 (S.D.N.Y. July 26, 2001), *quoting Lucidore v. New York State Div. of Parole*, 209 F.3d at 112, *citing Barefoot v. Estelle*, 463 U.S. 880 at 893 n. 4. *Word v. Lord*, U.S. Dist. LEXIS 18031 (S.D.N.Y. Sept. 23, 2002).

Denial of privileges and immunities under the law is prohibited under the U.S. Constitution Article IV. District courts should grant a Writ of Error Coram Nobis where a defendant "has made a substantial showing of the denial of a constitutional right." *See* Judge Loretta A. Preska's Order in *Rajaratnam v. United States*, 15 Civ. 5325 (S.D.N.Y. 2017), Document 16 (LAP); *See* 28 U.S.C. § 2253(c)(2). The record outlines a substantial showing including credible assertions of *factual innocence, actual innocence, and legal innocence* which brings rise to the possibility of a Miscarriage of Justice. It is well-settled law that "actual innocence means factual innocence" not mere legal insufficiency. *See Rosario v. United States*, 164 F.3d 729, 733 (2d Cir. 1998). To show "actual innocence," a petitioner must produce new, reliable evidence sufficient to make a "colorable showing" that "it is more likely than not that no reasonable juror would have convicted [Petitioner]" in light of the new evidence. *See Schlup v. Delo*, 513 U.S. 298, 329, 130 L. Ed. 2d 808, 115 S.Ct. 851 (1995); *See also Lucidore v. New*

*York State Div. of Parole*, 209 F.3d 107, 114 (2d Cir. 2000). "To show a fundamental miscarriage of justice requires a demonstration of actual innocence." *See, e.g., Calderon v. Thompson*, 523 U.S. 538, 559, 118 S.Ct. 1489, 140 L.Ed.2d 728 (1998) (*citing Sawyer v. Whitley*, 505 U.S. 333, 339, 112 S.Ct. 2514, 120 L. Ed. 2d 269 (1992)).

A miscarriage of justice has been defined as "a grossly unfair outcome in a judicial proceeding, as when a defendant is convicted despite a lack of evidence on an essential element of the crime" and includes "wrongful charges or indictments." As such, defense attorneys, prosecutors, and judges commit miscarriages of justice which are unintentional or accidental, as such committed by fallible human beings. *See* Robert M. Bohm, *University of Central Florida Journal of Contemporary Criminal Justice*, Vol. 21 No. 3, page 196, (August 2005). A miscarriage of justice is concerned with actual innocence as compared to legal innocence. As mentioned above, the record and documents conclusively demonstrate that Mr. Penn was a joint or common beneficial owner of the rights to distributions from the Partnership establishing factual and actual innocence given the requirements in *People v. Zinke* (1990). The factual and actual evidentiary elements in this case and the *Zinke* larceny exemption are the basis of legal innocence. Mr. Penn could not have forfeited ownership interest in property that he did not own. As part of his plea agreement, Mr. Penn was required to forfeit his ownership interest in the Partnership. *See* Forfeiture Agreement at pgs. A. 276-278 of Exhibit A to the Penn Affidavit. To do so, Mr. Penn necessarily had to own an interest that he could subsequently forfeit. The United States Supreme Court has emphasized that miscarriage of justice has a narrow scope. *Sawyer*, 505 U.S. at 339. To be credible, a claim of actual innocence must be based on reliable evidence not presented at trial. *See Davis v. Poole*, 767 F. Supp. 2d 409 (2011) (*quoting Schlup*

*v. Delo*, 513 U.S. 298, 324, 115 S.Ct. 851, 865, 130 L.Ed.2d 808 (1995); *accord Calderon*, 505 U.S. at 339).

Evidence in parallel state proceedings show that Mr. Penn was the joint or common beneficial owner with the rights of distributions from the partnership given his 100% sole ownership of CASO G.P. LLC.  *See* the Amended and Restated CASO G.P. CASO G.P. LLC Agreement, at pg. A. 122 attached as Exhibit A to the Penn Affidavit; *See also,* the Subscription Agreement for CASO G.P., attached as Exhibit B to the Penn Affidavit; *See also* CASO G.P. LLC K-1s, attached as Exhibit I to the Penn Affidavit (not presented at the trial court).  The mere possibility of a miscarriage of justice demonstrates a need for constitutional remedies under the Writ of Error Coram Nobis given the precedent decision in *Class v. United States* (2018) and demands a reversal to the Court of Appeals of the New York Court where the case can be heard on the merits.

### C.     Mr. Penn Continues to Suffer Legal Consequences Including "Stigma-Plus" Warranting Relief of a Hearing on the Merits by the Court of Appeals of the State of New York, where common law pursuant to *Zinke* (1990) originated

Prior to the charge and conviction, Mr. Penn, a West Point graduate, who honorably served as an Army officer, earned 3 master's degrees, and had a distinguished career in the financial services industry.  The Petitioner currently suffers because a felony conviction by New York State law is deemed a disability.  A disability by New York State law is more than a concrete threat because it is a permanent legal state of being, a continuing legal consequence by law and requires a certificate of relief pursuant to N.Y. Correction Law § 700-706.  "To meet the burden of demonstrating that he suffers from a continuing legal consequence, a petitioner must at least point to a concrete threat that an erroneous conviction's lingering disabilities will cause serious harm. . ..[I]t is not enough to raise purely speculative harms."  *See Agrawal v. United*

*States,* 2017 U.S. Dist. LEXIS 121909, *quoting Fleming v. United States*, 146 F.3d 91 (2d Cir. 1998) (alterations in original; inner quotation marks and citation omitted).  Mr. Penn has specific legal consequences by New York State law because he was charged in conflict with New York State law for conduct that is not criminal and as a result was required to forfeit his interest and right to receive distributions from the Partnership.  This is a specific constitutional consequence because it is a loss of interest by way of a conviction in conflict with New York law. *See Zinke.* Other specific constitutional consequences and disabilities include a tax levied based purely on a guilty plea, the inability to serve on a jury, and federal bar on possessing a firearm. *See* Lawrence E. Penn III New York State tax assessment, attached as Exhibit J to the Penn Affidavit.

Additionally, pursuant to Section 7.6(b) of the Partnership agreement, Mr. Penn was removed as General Partner and his interest and right to receive distributions from the partnership was reduced by 50% because of the indictment.  Finally, these legal and contractual actions are specific continuing legal consequences warranting relief. *See Fleming v. United States,* 146 F.3d 90-91 (2d Cir. 1998).  Several proceedings now pending are relying on the conviction in conflict with law exacerbating the disabilities and prejudicing Mr. Penn in parallel proceedings to include Tax Appeals and a parallel New York State civil arbitration initiated purely to obtain a "back-up judgment" (in conflict with res judicata and Delaware Law) in case Mr. Penn's appeal process results in the dismissal of the original indictment. *See* excerpt of Arbitration Hearing Minutes April 11, 2018, Page 549, Lines 16-20 of Exhibit K to the Penn Affidavit:

> Question:  So, if I understand you
> correctly, the $9.3 million you're seeking
> was just in case Mr. Penn won his appeal,

is that fair to say?
Answer: That's fair to say.

In addition to the specific collateral consequences of a criminal conviction, the *Counsel of State Governments, National Inventory of the Collateral Consequences of Conviction* outlines legal and regulatory sanctions and restrictions that limit or prohibit people with criminal records from accessing employment, occupational licensing, housing, voting, education, and other opportunities. Collateral consequences most frequently affect people who have been convicted of a crime, though in some states an arrest alone, even an arrest that does not result in a conviction, may trigger collateral consequences. There are thousands of specific collateral consequences that affect Mr. Penn throughout the continental United States and at the Federal level and dozens in New York State.[8] The wide-ranging extent of civil disabilities triggered by criminal conviction is receiving increased scrutiny in the legal literature, and rightly so. *See, e.g.*, A.B.A. Standards for Criminal Justice, Collateral Sanctions and Discretionary Disqualification of Convicted Persons (3d ed. 2004); Michael Pinard & Anthony C. Thompson, *Offender Reentry and the Collateral Consequences of Criminal Convictions: An Introduction*, 30 N.Y.U. Rev. L. & Soc. Change 585 (2006); *See* Margaret Colgate Love, *Starting Over with a Clean Slate: In Praise of a Forgotten Section of the Model Penal Code*, 30 Fordham Urb. L. J. 1704 (2003); Nora Demleitner, *Preventing Internal Exile: The Need for Restrictions on Collateral Consequences*, 11 Stan. L. & Pol'y Rev. 153 (1999). There are specific disabilities, fines, forfeitures, restitution, and collateral consequences on the record. In addition to those mentioned

---

[8] The National Inventory of Collateral Consequences of Conviction is supported by a grant from the Bureau of Justice Assistance, Office of Justice Programs, U.S. Department of the Justice. This project was initially supported by Award No.2009-IJ-CX-0102 awarded by the National Institute of Justice, Office of Justice Programs, U.S. Department of Justice and by the ABA Criminal Justice Section. See https://niccc.csgjusticecenter.org/

above, Mr. Penn is ineligible for various government assistance, employment and licensure in his profession at the federal and state level. The specific disabilities include: a tax fines, a forfeiture of his interest, a restitution payment, Stigma-plus and collateral consequences outlined on the record. These disabilities strongly show a miscarriage of justice and evidence of excessive fines under the Eighth Amendment of the U.S. Constitution as well as Due Process violations, particularly given conviction in conflict with New York State law.

A crushing injury Mr. Penn continues to suffer is found in the Stigma-plus doctrine is a principle that enables a plaintiff, to seek relief for government defamation under federal constitutional law. Defamation by a government official is actionable as a civil-rights violation only if the victim suffers some loss of property interest. The Supreme Court affirmed, "in even more explicit terms, where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." *See* Eric J. Mitnick, *Procedural Due Process and Reputational Harm: Liberty as Self-Invention,* University of California, Davis Vol. 43:79 (2009); *See also Wisconsin v. Constantineau,* 400 U.S. 433, 435 at 437 (1971). To prevail on this doctrine, plaintiffs must plead (1) the utterance of a statement sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she claims is false, and (2) a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights. *See Spinale v. USDA,* 621 F. Supp. 2d 112 (S.D.N.Y. 2009). Reputational injury in the criminal context triggers due process protection because the stigma created by a charge of criminal wrongdoing runs more deeply and has broader consequences than does the broadly shared risk of the same form of harm in employment and other universal contexts. *See,* Barbara Armacost, *Race and Reputation: The Real Legacy of* Paul v. Davis, 85 VA. L. REV. 569, 575 at 622 (1999).

above, Mr. Penn is ineligible for various government assistance, employment and licensure in his profession at the federal and state level.  The specific disabilities include: a tax fines, a forfeiture of his interest, a restitution payment, Stigma-plus and collateral consequences outlined on the record.  These disabilities strongly show a miscarriage of justice and evidence of excessive fines under the Eighth Amendment of the U.S. Constitution as well as Due Process violations, particularly given conviction in conflict with New York State law.

A crushing injury Mr. Penn continues to suffer is found in the Stigma-plus doctrine is a principle that enables a plaintiff, to seek relief for government defamation under federal constitutional law.  Defamation by a government official is actionable as a civil-rights violation only if the victim suffers some loss of property interest.  The Supreme Court affirmed, "in even more explicit terms, where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." *See* Eric J. Mitnick, *Procedural Due Process and Reputational Harm: Liberty as Self-Invention,* University of California, Davis Vol. 43:79 (2009); *See also Wisconsin v. Constantineau,* 400 U.S. 433, 435 at 437 (1971).  To prevail on this doctrine, plaintiffs must plead (1) the utterance of a statement sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she claims is false, and (2) a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights.  *See Spinale v. USDA,* 621 F. Supp. 2d 112 (S.D.N.Y. 2009).  Reputational injury in the criminal context triggers due process protection because the stigma created by a charge of criminal wrongdoing runs more deeply and has broader consequences than does the broadly shared risk of the same form of harm in employment and other universal contexts.  *See,* Barbara Armacost, *Race and Reputation: The Real Legacy of Paul v. Davis,* 85 VA. L. REV. 569, 575 at 622 (1999).

The Stigma portion of the Stigma-plus doctrine occurred at the very beginning when Mr. Penn was charged with larceny in conflict with New York State common law clearly established and interpreted by the Court of Appeals of the State of New York in *People v. Zinke* (1990). First, Mr. Penn was a joint or common owner as clearly established on the record, making it prohibitive to charge him with larceny, money laundering, and falsifying business records in the first degree. Second, on the day of indictment, Mr. Penn's defense counsel's statement on the record in conflict with law, was sufficiently derogatory to injure, and capable of being proved false and unlawful. Finally, the Court allowed a media coverage request using "still photography" throughout the proceeding and allowed the dissemination of "photographs or videotape to all accredited media outlets present at the time" of the proceedings, enhancing the very stigma portion of the Stigma-plus doctrine. *See* Media Request and Coverage attached as Exhibit L to the Penn Affidavit.

A plaintiff must show that the government has stigmatized him by making a statement about him which he claims is false, that is capable of being proven true or false and that is sufficiently derogatory to injure his or her reputation. The plaintiff must show a "plus" factor, that the government has imposed a tangible and material burden on the plaintiff that alters his or her legal status, that only the government could impose. This "plus" factor of the Stigma-plus doctrine mentioned in above, shows that Mr. Penn currently suffers because a felony conviction by New York State law is deemed a disability and requires a Certificate of Relief from Disabilities pursuant to N.Y. Correction Law § 700-706. A disability by New York State law is more than a concrete threat because it is a permanent legal state of being and a continuing legal consequence by law. The specific constitutional consequence is due to loss of interest by way of a conviction in conflict with New York law as clearly established by *People v. Zinke* (1990).

Other specific constitutional consequences include a tax levied based purely on a guilty plea, the inability to serve on a jury, and federal bar on possessing a firearm. *See* Lawrence E. Penn III, New York State tax assessment, attached as Exhibit J to the Penn Affidavit. "[T]he right to be heard before being condemned to suffer grievous loss of any kind, *even though it may not involve the stigma and hardships of a criminal conviction,* is a principle basic to our society." *See Joint Anti-Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 168 (1951) (Frankfurter, J., concurring) (*emphasis supplied*).

"Substantive due process standards are violated only by conduct that is so outrageously arbitrary as to constitute a gross abuse of governmental authority." *See Natale v. Town of Ridgefield,* 170 F.3d 258, 263 (2d Cir.1999) (citations omitted). As a result, the state may act in a way that damages an individual's public standing without first offering the individual a hearing or other opportunity to contest the state's charge of wrongdoing. Only if some more tangible loss (e.g., concurrent loss of employment) accompanies state-caused stigmatic harm does a constitutional right to procedural due process arise. *See Paul v. Davis*, 424 U.S. 693, 712 at 701 (1976). "An arrest or charge is a 'public act' that brands the subject as a criminal in the eyes of others; it has the potential to 'disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family, and his friends.'" *See*, Barbara Armacost, *Race and Reputation: The Real Legacy of* Paul v. Davis, 85 VA. L. REV. 569, 575 at 622 (1999). Here, the actions of the courts of New York State damaged Mr. Penn's public standing without first offering the individual a hearing or other opportunity to contest the legality of state's charge. The state-caused stigmatic harm brings rise to a constitutional right to procedural due process. District courts should grant a Writ of Error Coram Nobis where a defendant "continues to suffer legal consequences from his conviction that

may be remedied by granting the writ," the third prong of the Writ of Error Coram Nobis. *See* Judge Loretta A. Preska's Order in *Rajaratnam v. United States*, 15 Civ. 5325 (S.D.N.Y. 2017), Document 16 (LAP). Relief is required under the U.S. Supreme Court's precedents in *Class v. United States* (2018) and the U.S. Supreme Court's *Blackledge-Menna* doctrine both of which supersede and undermine any New York State precedent.

### D.     The Entry of a Stay is Appropriate and Warranted as Relief

As stated above in legal standards of review, the entry of stay is appropriate under 28 U.S.C. § 1651; as (1) state court's decision conflicts with Supreme Court's prior decisions, (2) there is reasonable probability that the case would warrant certiorari to Supreme Court, and (3) "will cause irreparable harm" [to a person] "that is intolerable" under [the Constitution]. *See CBS Inc. v. Davis*, 510 U.S. 1315 (1994). In this case, the state courts' decision, based on facts and law (as stated above) conflicts with both New York State law in *People v. Zinke* (1990) and the U.S. Supreme Court's decisions in *Class v. United States* (2018), both of which are well settled clearly established law recognized throughout the United States. Because the concepts in both cases have national importance, there is reasonable probability that the case would warrant certiorari as *Class* warranted certiorari, was awarded certiorari and confirmed 150 years of common law associated with the constitutionality of appealing a plea. Given the clearly interpreted, well settled common law at both the Court of Appeals of New York State and the U.S. Supreme Court, if not addressed, "will cause irreparable harm" to Mr. Penn, particularly, if it is determined that the criminal conviction was in conflict with the law. A wrongful conviction, particularly for a West Point graduate, U.S. Army veteran who honorably served is something "that is intolerable" and repugnant under the U.S. Constitution, the very document Mr. Penn swore to support and defend.

## CONCLUSION

Granting the Writ of Coram Nobis would remedy the legal consequences Mr. Penn experienced as a result of the indictment and conviction in conflict with New York State law and allow the Court of Appeals of the State of New York to consider the case consistent with the precedent decisions in *People v. Zinke* (1990) and the U.S. Supreme Court's decision in *Class*.

WHEREFORE, for the foregoing reasons, Petitioner requests an Order from the United States District Court of the Southern District of New York pursuant to 28 U.S.C. § 1651 to issue a Writ of Error Coram Nobis to (1) enforce the U.S. Supreme Court common law precedents confirmed in *Class v. United States,* 138 S.Ct. 798, 800 (2018) and associated U.S. Supreme Court precedents by reversing the decision to deny the Petitioner's appeal application and have the case sent to the Court of Appeals of the State of New York to be heard on the merits outlined in the precedent decisions in *People v. Zinke* (1990), (2) to issue a stay on any civil proceedings which rely in whole or in part on the underlying conviction in *People v. Penn* 73/2014 until the end of the appeal process; and (3) to grant such other and further relief as the Court deems just and proper.

Date:   New York, New York
         July 6, 2018

Respectfully submitted,

By:  _____
         Lawrence E. Penn III, *Pro Se*
         145 East 48th Street
         New York, NY 10017
         Phone:  +1-917-582-8940
         Lpenn3@gmail.com

# VERIFICATION

STATE OF NEW YORK      )
                       ) ss.:
COUNTY OF NEW YORK  )

I, LAWRENCE E. PENN III, being duly sworn, deposes and says as follows:

1.      I am a *Pro Se* Litigant and Petitioner for the above-captioned case.

2.      I have read the foregoing Verified petition and know the contents thereof; and that the same is true to my knowledge, except as to matters herein stated to be alleged upon information and belief, and as to those matters I believe them to be true.

_____

Lawrence E. Penn III, *Pro Se*
145 East 48th Street
New York, NY 10017
Phone:  +1-917-582-8940
Lpenn3@gmail.com

SWORN TO BEFORE ME THIS

_6_ day of July 2018

_____
NOTARY PUBLIC

YANCY FLEETWOOD
Notary Public - State of New York
No. 01-FL6034777
Qualified in Suffolk
My Commission Expires Dec. 20, 2017
21

-45-